UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIPE FERNANDEZ,

Plaintiff,

-v-

THE BUFFALO BILLFOLD COMPANY,

Defendant.

24 Civ. 7242 (JPC)

OPINION AND ORDER

JOHN P. CRONAN, United States District Judge:

Plaintiff Felipe Fernandez brings this action against Defendant The Buffalo Billfold Company ("Billfold"), asserting violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.* Fernandez, who is blind, alleges that Billfold's website is not equally accessible to blind and visually impaired individuals who, like him, use screen-reading software to navigate the internet. With discovery closed, Billfold now moves for summary judgment on all claims, arguing, among other things, that Fernandez lacks standing.

The Court agrees. The ADA affords a private plaintiff only injunctive relief, and Fernandez has not shown a real and immediate threat that Billfold's website will injure him in the future. The Court therefore dismisses Fernandez's federal claims for injunctive and declaratory relief under the ADA for lack of standing. The Court further declines to exercise supplemental jurisdiction over Fernandez's city-law claims.

# I. Background

## A. Facts[1]

Billfold manufactures and sells leather goods. Its only physical location is a store in Worthington, Minnesota, but it also sells its products online at buffalobillfoldcompany.com. Deft. 56.1 Stmt. ¶ 22; Stein Decl., Exh. C ("Keitel Decl.") ¶ 5; Dkt. 33 ("Deft. Motion") at 1-2. Billfold's products "are, and always have been, made in the United States of America, of genuine bison leather from native American bison." Keitel Decl. ¶ 6. The company does "not import leather from Brazil or any other country." *Id.* Billfold thus does not sell, and has never sold, any products made of Brazilian leather. Deft. 56.1 Stmt. ¶ 20; *see* Keitel Decl. ¶ 6.

Fernandez is a blind resident of Yonkers, New York. Deft. 56.1 Stmt. ¶ 1. He accesses the internet using a laptop equipped with Job Access With Speech ("JAWS"), a screen-reading software program. *Id.* ¶¶ 3-4; Stein Decl., Exh. A ("Fernandez Dep. Tr.") at 15:11-22. On or about April 18, 2024, Fernandez visited Billfold's website from his home in Yonkers. Fernandez Dep. Tr. at 22:15; Deft. 56.1 Stmt. ¶¶ 2, 10; *see* Fernandez Dep. Tr. at 17:24-18:5, 19:25-20:12.[2] He had never

[1] The facts herein are drawn from the declaration and attached exhibits submitted by Billfold in support of its motion for summary judgment, *see* Dkt. 31 ("Stein Decl."), as well as Billfold's statement of undisputed material facts submitted pursuant to Local Civil Rule 56.1(a), Dkt. 32 ("Deft. 56.1 Stmt."). In setting forth the facts of this case, the Court does not cite to Fernandez's statement of undisputed facts, Dkt. 37-1 ("Pl. 56.1 Counter Stmt."), because Fernandez's counterstatement's responses and additional statements of fact are not "followed by citation to evidence which would be admissible." Loc. Civ. R. 56.1(d); *see Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[D]istrict courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." (citation modified)).

[2] At his deposition, Fernandez repeatedly testified that he visited Billfold's website in April 2025. *See* Fernandez Dep. Tr. at 17:24-18:19, 28:25-29:5. That cannot be true because this lawsuit was filed in September 2024, Fernandez testified that he never returned to the website, and his own Complaint pleads that the visit occurred on or about April 18, 2024. Dkt. 1 ("Compl.") ¶ 44; Fernandez Dep. Tr. at 64:16-23, 67:10-13. Indeed, Fernandez's deficient counterstatement of undisputed facts, *see supra* n.1, admits that he visited Billfold's website on or about April 18, 2024. Pl. 56.1 Counter Stmt. ¶ 10.

heard of Billfold before that day. Fernandez Dep. Tr. at 38:13-16, 51:2-7; Deft. 56.1 Stmt. ¶ 5. He also did not know whether Billfold had a physical store and was interested only in making a purchase online. Deft. 56.1 Stmt. ¶¶ 6-7; Fernandez Dep. Tr. at 67:14-22.

At his deposition, Fernandez was asked how he came to visit Billfold's website. Initially, he testified that a man named Alex—"I think the person was Alex maybe"—"provided me the information, the site" because Alex "wanted me to see if I could purchase an item from there" and "to see whether that site had accessibility or not." Fernandez Dep. Tr. at 25:13-18, 26:2-9, 26:21-27:1, 27:4-9. Fernandez added that Alex is not visually impaired, that he had never met Alex before that day, and that he did not know Alex's last name. *Id.* at 28:3-10, 37:8-10. During their one meeting, Alex apparently "observed" Fernandez "using the [Billfold] website" while they were on a call over a "platform like Zoom" in order "to see whether [Fernandez] was able to get the information, you know, and navigate the site." *Id.* at 24:14-25:12.

Despite testifying that the day he checked Billfold's website was "the first time" he "ever communicated with Alex," Fernandez also stated that Alex had his phone number on that day because he previously "had checked other sites . . . for [Alex] before to see whether they were accessible or not." *Id.* at 28:23-29:20, 32:13-33:10. Later on, however, Fernandez walked back that testimony, explaining that Billfold's website was actually the only site Alex ever asked him to check. *Id.* at 38:9-22.

Although Fernandez had initially confirmed that it was his testimony that "Alex contacted you . . . and he wanted you to tell him whether [the Billfold] site was ADA compliant," *id.* at 36:19-25, his story in this regard shifted halfway through his deposition too. For the first time, Fernandez stated that Alex's request had merely been for Fernandez to "type in something . . . that I would like to purchase," that Fernandez typed "leather goods" into a general internet search, and that Billfold's website "came up" in the results. *Id.* at 41:2-22. Fernandez continued to vacillate on this

point throughout his deposition: when defense counsel later asked him whether his testimony was now that Alex "did not tell you about Buffalo Billfold Company's website" but "just asked you to try to buy something online," Fernandez answered, "It was both." *Id.* at 42:17-43:25.

Fernandez's explanation for how he landed on Billfold's website eventually evolved to maintaining that he actually visited the company's website because he had been looking to buy a leather bag for himself that was made of "a hundred percent" Brazilian leather, *id.* at 47:16-49:12, that he had selected Billfold's website from among other search results because it had "specified Brazilian leather," and that he "specifically remember[ed]" that the site said it offered Brazilian leather, *id.* at 49:18-50:25. He further testified that he would not be willing to buy a leather bag that was not Brazilian leather, *id.* at 52:4-16, and that he would not want to purchase from Buffalo Billfold if it did not sell Brazilian leather goods, *id.* at 75:6-16. But of course, as explained above, Billfold does not sell, and never has sold, any products made of Brazilian leather. Deft. 56.1 Stmt. ¶ 20; *see* Keitel Decl. ¶ 6.

Once he clicked on Billfold's website, Fernandez stated that he located an item he wanted to purchase, but that when he clicked on the item, the page "refresh[ed]" and returned him "to the beginning" in a way "that wasn't static, it was dynamic." Fernandez Dep. Tr. at 53:13-55:21, 58:21-59:20. Fernandez also testified, in general terms, that "[c]ertain elements of the site" were "not JAWS friendly," including "some icons that require identification for what it was." *Id.* at 53:4-12. Fernandez did not call or email Billfold to seek assistance or to report a problem, *id.* at 65:25-66:10; Deft. 56.1 Stmt. ¶ 15, and he has not since returned to Billfold's website and does not know whether it is accessible today, Fernandez Dep. Tr. at 64:16-23, 67:10-13; Deft. 56.1 Stmt. ¶ 19. In fact, in the fourteen months between his visit to Billfold's website and his deposition, Fernandez has not attempted to purchase a leather bag—Brazilian leather or otherwise—from any other retailer or website. Fernandez Dep. Tr. at 51:8-52:3, 67:23-68:3.

Fernandez is a frequent ADA litigant. Billfold's counsel attached to his declaration a chart with results from a PACER Case Locator search for filings by Fernandez. Stein Decl. ¶ 4; Stein Decl., Exh. B. That chart reveals fifty-four actions filed by Fernandez in this District from May 2024 to October 2025, each bearing the nature-of-suit code for a civil rights action under the ADA. Stein Decl., Exh. B.[3] Based on the Court's review of the dockets for those fifty-four cases, in each Fernandez has been represented by Rami Salim of Stein Saks PLLC. And at least five of those suits were brought against other sellers of leather goods—Buffalo Jackson Trading Co., LLC, Portland Leather Goods, Inc., Latico Trading Corp., D.M. Smucker, LLC; and L'Atelier Global, LLC—with each such lawsuit alleging that Fernandez attempted to buy a leather bag from the defendant's website. *Id.* at 2-3; Fernandez Dep. Tr. at 69:5-9. At his deposition, Fernandez stated that he does not keep track of the companies he sues, Fernandez Dep. Tr. at 60:24-61:22, 69:13-18, and that he has received money as a result of filing prior website-accessibility lawsuits, *id.* at 73:6-10. Asked whether he would like to receive money as a result of this lawsuit, Fernandez answered that he "would like the outcome to be that the site is accessible," and that "[i]f there's monetary compensation, I mean I'll take it." *Id.* at 72:12-73:5.

**B. Procedural History**

Fernandez initiated this action on September 25, 2024. Dkt. 1. The First Cause of Action alleges violations of the ADA, Compl. ¶¶ 70-77, the Second Cause of Action alleges violations of the NYCHRL, *id.* ¶¶ 78-90, and the Third Cause of Action seeks a judicial declaration of the alleged ADA and NYCHRL violations, *id.* ¶¶ 91-93. Billfold answered Fernandez's Complaint on March 14, 2025, Dkt. 10, and the parties concluded discovery on September 26, 2025, Dkt. 21. On

[3] On the date of the filing of this Opinion and Order, the Court also conducted its own search on PACER of filings by Fernandez with the corresponding nature-of-suit code for civil rights actions under the ADA. That search revealed sixty-seven actions filed in this District by Fernandez.

November 25, 2025, Billfold moved for summary judgment. Dkt. 30. Fernandez submitted an opposition to Billfold's motion on January 7, 2026, Dkt. 37,[4] and Billfold submitted a reply in support of its motion on January 14, 2026, Dkt. 38.

**II. Legal Standard**

Article III of the Constitution limits the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The doctrine of standing, which is an "essential and unchanging part" of that limitation, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), requires that a plaintiff "have a personal stake in [a] dispute," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (internal quotation marks omitted). In other words, even if a plaintiff can show a legal violation, he must also answer: "What's it to you?" Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 SUFFOLK U. L. REV. 881, 882 (1983).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Moreover, standing "is not dispensed in gross," so a plaintiff "must demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s]." *Id.* at 431. And when a plaintiff seeks prospective relief such as an injunction or a declaratory judgment, he "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (requiring a "real and immediate

[4] Fernandez submitted both a memorandum of law in opposition to Billfold's motion, Dkt. 36, and a corrected memorandum of law in opposition to the motion, Dkt. 37. For purposes of this Opinion and Order, the Court treats the corrected memorandum of law as Fernandez's operative opposition.

threat" of future injury); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Especially relevant here, professions of "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that" standing requires. *Lujan*, 504 U.S. at 564.

A plaintiff has the burden of establishing standing, and it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Thus, while "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, "[i]n response to a summary judgment motion . . . the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Id.* (internal quotation marks omitted); *see Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).

This standard is consistent with the familiar summary judgment standard, under which a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute in this context is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court therefore views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in his favor, *id.* at 255, but the non-movant "may not rely on conclusory allegations or unsubstantiated speculation," *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)

(internal quotation marks omitted), so "[t]he mere existence of a scintilla of evidence" in his favor is insufficient, *Anderson*, 477 U.S. at 252.

## III. Discussion

Where, as here, a private plaintiff sues under the ADA, he "may only obtain injunctive relief" and "cannot recover damages." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see* 42 U.S.C. § 12188(a)(1). Thus, whether Fernandez has standing to pursue his ADA claims turns on whether the evidence in the record would permit a reasonable factfinder to conclude that he faces "a real and immediate threat" of future injury from the alleged inaccessibility of Billfold's website. *Lyons*, 461 U.S. at 111.[5] In ADA cases, the Second Circuit has found such a threat of future injury to exist when "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that [the] plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013).

Here, the undisputed evidence does not permit a reasonable inference that Fernandez intends to return to Billfold's website. Indeed, Fernandez's deposition testimony clearly shows that he is merely a "'tester' who monitors whether places of public accommodation and their websites comply with the ADA." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 440 (2d Cir. 2022); *see also id.* at 444 n.3 ("The law is clear that testers can have standing, but even testers have to show that they have suffered an Article III injury in fact."). In Fernandez's own words, "[Alex] provided me the information, the site" because he "wanted me to see if I could purchase an item

[5] In his Third Cause of Action, Fernandez seeks a declaratory judgment that Billfold's website violates the ADA, *see* Compl. ¶¶ 91-93, but the same standing rule requiring future injury also applies to requests for a declaratory judgment. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.").

from there" and "to see whether that site had accessibility or not." Fernandez Dep. Tr. at 25:13-18, 26:2-9, 26:21-27:1, 27:4-9. Considering that Fernandez only visited Billfold's website in order "to tell [Alex] whether [it] was ADA compliant," *id.* at 36:19-25, that he has filed at least fifty-four, and perhaps as many as sixty-seven, ADA lawsuits, Stein Decl. ¶ 4; Stein Decl., Exh. B; *supra* n. 3, and that he does not even keep track of the companies he sues, Fernandez Dep. Tr. at 60:24-61:22, 69:13-18, no reasonable juror could conclude that there was an intent to return.

To be sure, Fernandez tried to shift his story midway through his deposition, testifying that he actually found Billfold's website during his independent search for a Brazilian leather bag. *Id.* at 41:2-44:14, 76:2-16. However, in the "rare circumstance" where a plaintiff opposes summary judgment by relying "almost exclusively on his own testimony, much of which is contradictory and incomplete," a court may make its own "assessment of the plaintiff's account" to "determine whether the jury could reasonably find for the plaintiff." *Jeffreys*, 426 F.3d at 554 (citation modified). This is such a case, and in the Court's assessment, no reasonable juror could believe Fernandez's revised account of why he visited Billfold's website. Indeed, Fernandez does not explain why he was on a Zoom-like call with a stranger named "Alex" if he was merely on his own attempting to purchase a leather bag, as opposed to searching for potential ADA violations. *See* Fernandez Dep. Tr. at 24:14-25:12. And Fernandez does not articulate why he visited Billfold's website in light of the fact that Billfold has never sold the Brazilian-leather products he purportedly was seeking to purchase. *Cf. Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 77 (2d Cir. 2022) (finding implausible a plaintiff's "Mad-Libs-style" claim that he "seeks to go back to Banana Republic for its food").

Moreover, even if one credits Fernandez's revised version of events, he still has not demonstrated an intent to return. His deposition testimony expresses no such desire, and his Local Civil Rule 56.1 counterstatement does not contain even a single citation to the record. Meanwhile,

it is undisputed that Fernandez had never heard of Buffalo Billfold before April 2024, he visited its website only once, and in the fourteen months between that visit and his deposition, he never attempted to buy a leather bag or return to Billfold's website. Fernandez Dep. Tr. at 38:13-16, 51:2-52:3, 64:16-23, 67:10-13, 67:23-68:3; Deft. 56.1 Stmt. ¶¶ 5, 11, 16. Indeed, Fernandez's revised story is that he visited the website in search of Brazilian leather goods, but Billfold does not sell, and has never sold, such goods, *see* Keitel Decl. ¶ 6; Deft. 56.1 Stmt. ¶ 20, so no reasonable jury could conclude that he intends to return to that website to conduct a futile search for products the company does not sell. *Cf. Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 82 n.6 (S.D.N.Y. 2022) (noting that the facts "le[ft] the Court questioning whether [the plaintiff], in fact, ever had or now has a particularized desire to purchase [the defendant's product] or just a particularized desire to sue [the defendant]"). Fernandez's ADA claim in the First Cause of Action and his claim for declaratory relief based on ADA violations in the Third Cause of Action are therefore dismissed for lack of standing. *See Deshawn E. by Charlotte E.*, 156 F.3d at 344.

The lone jurisdictional basis for Fernandez's remaining claims under the NYCHRL is supplemental jurisdiction under 28 U.S.C. § 1367(a). A court's exercise of supplemental jurisdiction is discretionary, however, and Fernandez has not articulated any circumstances that justify a departure from the principle that the dismissal of all federal causes of action from a complaint "will usually result in the dismissal of the state-law claims." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018); *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, the Court declines to exercise supplemental jurisdiction over Fernandez's NYCHRL claims.

## IV. Conclusion

For the above reasons, the Court lacks subject matter jurisdiction over Fernandez's federal claims and declines to exercise supplemental jurisdiction over his city-law claims. All his claims therefore are dismissed without prejudice. *See Carter*, 822 F.3d at 54 (explaining that the dismissal of claims for lack of subject matter jurisdiction "must be without prejudice, rather than with prejudice"). The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: August 19, 2026
New York, New York

JOHN P. CRONAN
United States District Judge